**E-Filed 10/12/05**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| JUAN D. MARTINEZ, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>MONTEREY COUNTY, CALIFORNIA, et al.,<br><br>　　　　　　Defendants. | Case Number C 05-2950 JF<br><br>ORDER DENYING MOTION TO LIFT STAY<br><br>[Doc. No. 53] |

BEFORE: TALLMAN, Circuit Judge, FOGEL, District Judge, and ILLSTON, District Judge.[1]

Plaintiffs move to lift the stay of the instant litigation imposed by this Court's order of August 4, 2005 ("August 4 Order"). The Court has reviewed the briefing submitted by the parties and of *amicus curiae* Edward J. Costa. For the reasons discussed below, the motion will be denied.

---

[1] The Honorable Richard Tallman, United States Circuit Judge, United States Court of Appeals for the Ninth Circuit, and the Honorable Susan Illston, United States District Judge, Northern District of California, sitting by designation pursuant to 28 U.S.C. § 2284.

## I. BACKGROUND

Plaintiffs allege that Defendants have failed to obtain preclearance of a change in voting procedures as required under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. "Section 5 governs changes in voting procedures, with the purpose of preventing jurisdictions covered by its requirements from enacting or seeking to administer voting changes that have a discriminatory purpose or effect." *Lopez v. Monterey County*, 519 U.S. 9, 12 (1996). Defendant Monterey County is a covered jurisdiction and therefore must obtain federal preclearance of any voting practice different from the practices in effect on November 1, 1968. *Id.* at 11. A covered jurisdiction may obtain administrative preclearance of a change in voting procedure by submitting the enacting legislation to the Attorney General of the United States; "[i]f the Attorney General does not formally object to the new procedure within 60 days of submission, the jurisdiction may enforce the legislation." *Id.* at 12. Alternatively, a covered jurisdiction may obtain judicial preclearance "by securing in the United States District Court for the District of Columbia a declaratory judgment that the new procedure 'does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color . . . .'" *Id.* (citing 42 U.S.C. § 1973c).

Plaintiffs allege that a change in voting procedures occurred when proponents of Proposition 77, an initiative measure that has been placed on the ballot for a statewide special election on November 8, 2005, circulated a petition containing text that differed from the text of the measure that had been submitted to California's Attorney General for preparation of a title and summary pursuant to state law. Plaintiffs filed the instant action on July 20, 2005, naming as defendants Monterey County, the State of California and California's Secretary of State, Bruce McPherson. Plaintiffs filed the operative amended complaint on July 28, 2005. In conjunction with the filing of both pleadings, Plaintiffs sought a temporary restraining order ("TRO") preventing Defendants from going forward with preparations to place Proposition 77 on the ballot absent Section 5 preclearance, as well as an order to show cause why a preliminary injunction should not issue.

On August 4, 2005, this Court issued an order denying without prejudice Plaintiffs'

application for TRO, granting Plaintiffs' motion to convene a three-judge panel and staying litigation of the instant action pursuant to the *Colorado River*[2] abstention doctrine. The Court's decision to abstain rested in large part upon the fact that the issue of whether Proposition 77 should appear on the ballot was being litigated vigorously in a parallel state action commenced by California's Attorney General. At the time this Court issued its ruling denying Plaintiffs' application for TRO, the California Superior Court had issued an order directing that Proposition 77 be stricken from the ballot on the ground that the discrepancies between the text submitted to the Attorney General and the text included in the petition were inconsistent with the requirements of California's Constitution and Elections Code; however, the California Court of Appeal, Third Appellate District, had stayed that order pending disposition of a petition for writ of mandate filed by the initiative measure's proponents. This Court reasoned that a state court determination that there has been a violation of state law sufficient to preclude inclusion of Proposition 77 on the ballot would moot the instant action, and that a contrary determination would bear significantly upon Plaintiffs' claim that there has been a material change in voting procedures. The Court requested that the parties notify it immediately of any change in the status of the state court proceedings.

On August 9, 2005, the California Court of Appeal denied the petition for writ of mandate, thus effectively reinstating the Superior Court's order that Proposition 77 be stricken from the ballot. On August 10, 2005, proponents of the initiative measure filed an emergency petition for review in the California Supreme Court. On August 12, 2005, that court granted the petition for review, stayed the judgment of the Superior Court and directed that the California Secretary of State go forward with preparations for including Proposition 77 on the ballot for the November 8 special election. The court concluded that there was an insufficient showing that the discrepancies between the version of the initiative measure submitted to the Attorney General and the version that was circulated for signature were likely to have misled the persons who signed the initiative petition, and that under such circumstances it would be inappropriate to deny

---

[2] *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

the electorate the opportunity to vote on Proposition 77 at the special election. The court retained jurisdiction to resolve the question of substantial compliance with California law after the election. On August 15, 2005, Defendant Monterey County filed a status report advising this Court of the California Supreme Court's order. On the same date, the state printer received the final version of the Voter Information Guide; subsequently, the process of printing, binding and distributing approximately twelve million copies of the guide began.

On September 1, 2005, Plaintiffs electronically filed a document entitled, "Status Report." This document notified this Court of the developments in the state court proceedings and included a "suggestion" that the Court act *sua sponte* to lift the stay imposed by the August 4 Order. Plaintiffs did not submit paper courtesy copies of the document as required by this Court's standing order with respect to any pleading requesting judicial action, nor did their counsel contact chambers to inform the Court that the document suggested or required any action by the Court. Later that day, Defendant McPherson electronically filed a letter objecting to Plaintiffs' "suggestion" that the Court act in the absence of a noticed motion and orderly briefing. On September 8, 2005, chambers staff discovered both Plaintiffs' status report and Defendant McPherson's letter in the course of a routine review of the docket in this case. On September 9, 2005, the Court issued an order directing Plaintiffs to file a noticed motion if they wished to seek relief from the stay and further directing all parties to provide paper courtesy copies of future filings to all members of the three-judge panel. On September 22, 2005, Plaintiffs filed the instant motion as well as renewed motions for a TRO and a preliminary injunction. The mailing of the ballot pamphlets commenced on September 24, 2005. According to Defendants, the pamphlets cost $3.9 million to print and will cost an additional $3 million to mail. On September 26, 2005, this Court set an expedited briefing schedule on the instant motion and deferred action on Plaintiffs' remaining motions pending a determination as to whether the stay should be lifted. Briefing on the instant motion was completed on October 6, 2005.

## II. DISCUSSION

As noted above, this Court has stayed the instant litigation pursuant to the *Colorado River* abstention doctrine, under which a federal court may defer to a parallel state court proceeding

based upon "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Tovar v. Billmeyer*, 609 F.2d 1291, 1293 (9th Cir. 1980) (quoting *Colorado River*, 424 U.S. at 817).  The Ninth Circuit has enumerated six factors to be considered in determining whether *Colorado River* abstention is appropriate:

> In *Colorado River*, the Court articulated four factors for determining whether sufficiently exceptional circumstances exist to warrant abstention: (1) whether either the state or federal court has exercised jurisdiction over a *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the forums obtained jurisdiction.  In *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, the Court added two more considerations: (5) whether federal or state law controls the decision on the merits; and (6) whether the state court can adequately protect the rights of the parties.

*40235 Washington Street Corp. v. Lusardi*, 976 F.2d 587, 588 (9th Cir. 1992) (internal citations omitted).

At the time it issued its August 4 Order, this Court concluded that while the first two factors were not implicated in the instant action, the last four factors mandated abstention.  The issue of whether Proposition 77 should appear on the ballot was being litigated in a parallel state court action; the state action was filed before the instant action and was further along; the state courts' determination of the state law questions at issue in the parallel action would bear upon – and could potentially moot – the questions at issue in the instant action; and Plaintiffs' position was represented adequately in the state court action, although Plaintiffs themselves were not parties to that action.

Plaintiffs assert that these bases for abstention no longer exist in light of the California Supreme Court's ruling that Proposition 77 will appear on the ballot and that issues of substantial compliance with state election law will be determined only after the election.  Plaintiffs assert that the California Supreme Court's order in essence approves the alleged change in voting procedures and is the functional equivalent of a legislative action adopting that change.  Plaintiffs argue that under these circumstances, the question of Section 5 preclearance now is squarely presented in this action, and cite *Lopez* for the proposition that this Court *must* ensure that the election does not go forward with Proposition 77 on the ballot absent preclearance.  *See Lopez*,

519 U.S. at 20 (stating that "[i]f a voting change subject to § 5 has not been precleared, § 5 plaintiffs are entitled to an injunction prohibiting implementation of the change").

However, Plaintiffs' reliance upon *Lopez* ignores numerous critical differences between that case and this one. In *Lopez*, the plaintiffs alleged that judicial consolidation ordinances that resulted in a single, countywide municipal court constituted election changes subject to Section 5 preclearance. *Lopez*, 519 U.S. at 15. The three-judge panel convened to address the claim agreed. *Id*. The panel, the plaintiffs and the county then spent several years attempting to reach agreement on a judicial election plan. During that period the panel permitted a special election to go forward under an interim plan for which preclearance was obtained. *Id*. at 18. However, in 1996, *four years* after the plaintiffs commenced the action, the panel ordered the county to hold a regularly-scheduled election under the very *same* plan that the panel had determined had not been precleared as required. *Id*. at 19. The plaintiffs filed an emergency application in the United States Supreme Court to enjoin the 1996 election.

The Supreme Court determined that the panel's order that an election go forward under a plan that had not been precleared was contrary to the principles embodied in Section 5 and in precedent. *Id*. at 20. The court concluded that the county had been on notice for several years that its electoral changes were subject to Section 5, but had failed to obtain administrative or judicial preclearance of those changes. *Id*. at 21. The court noted that it was an open question whether a district court ever could permit a covered jurisdiction to conduct an election under a voting plan that had not been precleared, and suggested that "[a]n extreme circumstance might be present if a seat's unprecleared status is not drawn to the attention of the [covered jurisdiction] until the eve of the election and there are equitable principles that justify allowing the election to proceed." *Id*. at 21-22 (quoting *Clark v. Roemer*, 500 U.S. 646, 654-55 (1991)). However, the court concluded that no such exigency existed with respect to the election at issue in *Lopez*.

In contrast, the type of exigency discussed in *Lopez* and *Clark* does exist here. While in *Lopez* it was determined years before the subject election that Section 5 was implicated, there has been no such determination in this case, and it is by no means evident as a matter of law what that determination will be. The Court in fact is being asked to make the determination on the eve

Case No. C 05-2950 JF
ORDER DENYING MOTION TO LIFT STAY
(JFLC2)

of the election. The State of California has spent millions of dollars to print and mail the Voter Information Guide and the ballot pamphlets, which include information on Proposition 77; indeed, it appears that absentee voting on Proposition 77 *already* is occurring.

Plaintiffs cannot be faulted for failing to move expeditiously in this Court initially, because the Court itself stayed the present federal action while awaiting a ruling by the California courts. However, the same cannot be said with respect to Plaintiffs' activity after the California Supreme Court restored Proposition 77 to the ballot on August 12, 2005. Plaintiffs did not even suggest that this Court should lift the stay until they filed their status report on September 1, nearly three weeks later. Even then, as noted above, they chose not to file a noticed motion and failed to comply with the express requirements of this Court's Standing Order. Plaintiffs cite no authority suggesting that this Court had a *duty* to act *sua sponte*. They did not file a cognizable motion to lift the stay until September 22, almost two weeks after the Court advised them specifically that they should do so and nearly six weeks after the California Supreme Court's decision. In a very real sense, Plaintiffs have created the exigent circumstances under which they now urge the Court to act.

Applying the *Colorado River* factors in light of the present situation, the Court concludes that abstention remains appropriate. The California Supreme Court has concluded that the November 8 election should go forward with Proposition 77 on the ballot and expressly has retained jurisdiction to make a post-election determination as to whether the measure's proponents complied substantially with California's election laws notwithstanding the discrepancies in the two versions of the measure. That court's ultimate determination of this issue may well moot the instant action; at the very least, its explication of California law will inform this Court's analysis of whether the discrepancies constitute a change in California's voting procedures sufficient to trigger Section 5.

While it is true, as Plaintiffs argue, that the question of whether the proponents of Proposition 77 have complied substantially with state election law is distinct from the *federal* question of whether there has been a change in voting procedures within the meaning of Section 5, *amicus curiae* notes correctly that the California Supreme Court itself has jurisdiction to

1  decide, as a collateral matter, whether the asserted change in California's voting procedures
2  requires Section 5 preclearance. *See Hathorn v. Lovorn*, 457 U.S. 255, 268-69 (1982). Given
3  the close relationship between the legal issues in the two cases, continued abstention by this
4  Court will avoid the type of piecemeal litigation eschewed in *Colorado River*.

5       In the event that the instant action is not rendered moot either by the decision of the
6  California Supreme Court or the voters' rejection of Proposition 77, this Court clearly is
7  empowered to address Plaintiffs' Section 5 claim after the election. *See Berry v. Doles*, 438 U.S.
8  190, 193 (1978); *Perkins v. Matthews*, 400 U.S. 379, 441 (1971). In *Berry*, the plaintiffs filed
9  suit four days prior to scheduled primary and general elections, alleging that a change in state
10 voting law had not been precleared as required by Section 5. The plaintiffs' request for
11 declaratory and injunctive relief was not acted upon until after the elections, at which point a
12 three-judge panel concluded that Section 5 was implicated and prospectively enjoined further
13 elections under the new law absent preclearance; however, the panel refused to set aside the
14 elections that already had been conducted under the new law. On appeal, the United States
15 Supreme Court affirmed the determination that preclearance was required under Section 5, but
16 reversed and remanded insofar as the three-judge panel had declined to order relief with respect
17 to the elections that had occurred under the new law. On remand, the district court was
18 instructed to issue an order allowing the appellees thirty days within which to apply for approval
19 of the new law under Section 5. *Berry*, 438 U.S. at 193.

20      In *Perkins*, the plaintiffs brought suit to enjoin citywide elections for mayor and
21 aldermen, alleging that changes in the locations of polling places, changes in the municipal
22 boundaries and a change from ward to at-large election of aldermen were subject to preclearance
23 under Section 5. Pending the designation of a three-judge panel, the district court temporarily
24 restrained the elections, but subsequently the three-judge panel dissolved the injunction and
25 dismissed the complaint. The elections were held pursuant to the challenged changes. On
26 appeal, the Supreme Court reversed, holding that the changes implicated Section 5. However,
27 the court declined to set aside the elections and instead remanded to the district court with
28 instructions to enjoin future enforcement of the changes until the changes were precleared and to

fashion an appropriate remedy with respect to the election that already had occurred. The court noted that "[i]n certain circumstances for example, it might be appropriate to enter an order affording local officials an opportunity to seek federal approval and ordering a new election only if local officials fail to do so or if the required federal approval is not forthcoming." *Perkins*, 400 U.S. at 396-97.

While *Berry* and *Perkins* are not precisely on point, these cases leave no doubt that this Court may fashion an appropriate post-election remedy for the Section 5 violation alleged by Plaintiffs if and when it is determined that a change requiring Section 5 preclearance has occurred. The alternative is to enjoin an election that is less than four weeks away, in which absentee voting already has commenced, and in connection with which the State of California already has expended millions of dollars in public funds. While post-election determination of Section 5 issues ordinarily is not desirable, the Court concludes that the equities and the totality of the circumstances presented in this case render continued abstention the most appropriate of the several undesirable courses open to it.

Accordingly, Plaintiffs' motion to lift the stay is DENIED. The Clerk is directed to terminate Plaintiffs' remaining motions without prejudice.

DATED: October 12, 2005

/s/ electronic signature authorized
_____
RICHARD TALLMAN
United States Circuit Judge

/s/ electronic signature authorized
_____
JEREMY FOGEL
United States District Judge

/s/ electronic signature authorized
_____
SUSAN ILLSTON
United States District Judge

Case No. C 05-2950 JF
ORDER DENYING MOTION TO LIFT STAY
(JFLC2)

1 | Copies of Order served on:

2 |

3 | Joaquin Guadalupe Avila    avilaj@seattleu.edu

4 | Leroy W. Blankenship    blankenshipl@co.monterey.ca.us, edwards-jamesg@co.monterey.ca.us

5 | Thomas S. Knox    tknox@klalawfirm.com, hharman@klalawfirm.com

6 | Zackery P. Morazzini    zackery.morazzini@doj.ca.gov

7 | James F Sweeney    jfs@sweeney-greene.com, ndb@sweeney-greene.com

8 | John David Trasvina    jtrasvina@maldef.org, ekensinger@maldef.org

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 05-2950 JF
ORDER DENYING MOTION TO LIFT STAY
(JFLC2)